## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**JOYCE REDDELL, Individually and as**
**Personal Representative on Behalf of the**
**Wrongful Death Beneficiaries of**
**CORY ALAN JACKSON**                                                           **PLAINTIFF**

**V.**                                                   **CIVIL ACTION NO.** 3:24-cv-264-KHJ-MTP

**RANKIN COUNTY, MISSISSIPPI; VITALCORE HEALTH**
**STRATEGIES, LLC; DAVID ELLIS, Individually and in Official**
**Capacity; DAVID GLENN HICKS, Individually and**
**in Official Capacity; GREG MCLENDON, Individually and**
**in Official Capacity; MARK CLARK, Individually and**
**in Official Capacity; TONYA REYNOLDS, Individually and**
**in Official Capacity; DEBRA MURPHY, Individually and**
**in Official Capacity; ANDREW WHITE, Individually and**
**in Official Capacity; JASON MCQUEARY, Individually and**
**in Official Capacity; BEN HASKIN, Individually and**
**in Official Capacity; JANICE PATRICK, Individually and**
**in Official Capacity; BETTY TUCKER, Individually and**
**in Official Capacity; AND JOHN and JANE DOES 1-100**          **DEFENDANTS**

---

## COMPLAINT
## (JURY TRIAL DEMANDED)

---

1.      This Complaint is brought by Joyce Reddell (hereinafter, "Plaintiff"), Individually and as Personal Representative on behalf of the wrongful death beneficiaries of Cory Alan Jackson, (hereinafter, "Decedent"), by and through undersigned counsel, against Rankin County, Mississippi; VitalCore Health Strategies, LLC (hereinafter "VitalCore"); David Ellis, Individually and in Official Capacity; David Glenn Hicks, Individually and in Official Capacity; Greg McLendon, Individually and in Official Capacity; Mark Clark, Individually and in Official Capacity; Tonya Reynolds, Individually and in Official Capacity; Debra Murphy, Individually

and in Official Capacity; Andrew White, Individually and in Official Capacity; Jason McQueary, Individually and in Official Capacity; Ben Haskin, Individually and in Official Capacity; Janice Patrick, Individually and in Official Capacity; Betty Tucker, Individually and in Official Capacity; and John and Jane Does 1-100, (hereinafter collectively, "Defendants"). In support, therefore, Plaintiff states as follows:

## JURISDICTION AND VENUE

2.    Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised according to 42 U.S.C. § 1983, as well as the 8th and 14th Amendments to the United States Constitution. This Court's jurisdiction is also invoked pursuant to 28 U.S.C. § 1331, §1332 and §1343.

3.    Venue is appropriate in this Court under § 1391(b) as all acts/or omissions occurred in Rankin County, Mississippi, located within the Southern District of the United States District Court, Northern Division.

## PARTIES

4.    Plaintiff Joyce Reddell is a Rankin County, Mississippi adult resident. Her residence is 112 Camellia Circle, Florence, Mississippi 39073, Rankin County, Mississippi. Plaintiff, the natural mother of the Decedent, brings this action individually and on behalf of the decedent's surviving heirs/wrongful death beneficiaries.

5.    The Decedent, at all times material to this Complaint, was an adult incarcerated at the Rankin County Detention Center (hereinafter, "RCDC"). Substantial acts, omissions, and events that caused the decedent's death took place in Rankin County, Mississippi. At the time of the incident, which gave rise to this Complaint, the Decedent was a 42-year-old citizen of the State of Mississippi and a pretrial detainee incarcerated at RCDC.

6.    Defendant Rankin County, Mississippi, is located within the Southern District of the United States District, Northern Division. By and through the Office of the Rankin County Sherriff's Department, Rankin County manages and operates the RCDC. Rankin County is responsible for providing humane care and treatment consistent with all constitutional and American Correctional Association standards.

7.    Defendant Rankin County, Mississippi, is subject to the personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Rankin County Chancery Court Clerk, Mark S. Scarborough, who also serves as the Clerk of the Rankin County Board of Supervisors, located at the Rankin County Chancery Courthouse, 203 North Street, Brandon, Rankin County, Mississippi 39042. Rankin County officials and policymakers knew about the numerous problems at the facility, including the inability to protect inmates from harm, resulting from officials' and policymakers' failure to provide medical treatment for inmates who need treatment for psychotic mental illness. Rankin County officials and policymakers knew that the RCDC was not adequately staffed, that the jailers were not properly trained, and that the inmates did not have adequate access to medical and mental health care.

8.    Bryan Bailey was the Sheriff of Rankin County, Mississippi, at the time of the Decedent's death. Sheriff Bailey was responsible for the administration of the RCDC and had the duty to hire, supervise, train, and discipline the staff at the facility, as well as ensure the facility's compliance with ACA standards and the laws and Constitutions of Mississippi and the United States. He also reviews, investigates, and responds to prisoner grievances and complaints. As an employee of the Defendant, he is considered the final policymaker for the Rankin County Detention Center at the time of the incident described in this Complaint. Sheriff Bailey knew that RCDC was dangerously understaffed with untrained jailers. Bailey also knew that RCDC has a pattern of ignoring and failing to provide medical treatment to inmates, such as the Decedent, Cory

Alan Jackson, who needed immediate medical treatment for psychosis because he was experiencing severe hallucinations, delusions, and confused and disturbed thoughts. RCDC knew that its failure to provide medical treatment to inmates suffering from psychosis would create a dangerous environment for inmates such as the Decedent.

9.     Defendant, VitalCore Health Strategies, LLC (hereinafter "VitalCore"), a for-profit private medical company incorporated and existing in the state of Kansas, is under contract with Rankin County, Mississippi, to provide the inmates housed in the RCDC with on-site medical care. Under its contract with Rankin County, VitalCore is responsible for providing humane care and treatment consistent with all constitutional and ACA standards. However, VitalCore frequently disregards its responsibilities to inmates. VitalCore has a pattern of ignoring and failing to provide medical treatment to inmates, such as the decedent, Cory Alan Jackson, who needed immediate medical treatment for psychosis because he was experiencing severe hallucinations, delusions, and confused and disturbed thoughts. VitalCore knew that its failure to provide medical treatment to inmates suffering from psychosis would create a dangerous environment for inmates such as the Decedent. VitalCore's principal business place is 719 SW Van Buren Street, Suite 100, Topeka, Kansas 66603. It is subject to its personam jurisdiction of this Court by service of process upon its registered agent, Corporation Service Company, 109 Executive Drive, Suite 3, Madison, MS 39110.

10.     Defendant David Ellis is a Rankin County Sheriff's Department deputy officer. He may be served with process and his place of employment at the Rankin County Sheriff's Office, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

11.     Defendant David Glenn Hicks is a Rankin County Sheriff's Department deputy officer. He may be served with process and his place of employment at the Rankin County Sheriff's

4

Office, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

12.     Defendant Greg McLendon is a Rankin County Sheriff's Department deputy officer. He may be served with process and his place of employment at the Rankin County Sheriff's Office, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

13.     Defendant Mark Clark is a jailer/correctional officer at the Rankin County Detention Center. He may be served with process and his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

14.     Defendant Tonya Reynolds is a jailer/correctional officer at the Rankin County Detention Center. She may be served with process and her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

15.     Defendant Debra Murphy is a jailer/correctional officer at the Rankin County Detention Center. She may be served with process and her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, wherever she may be found. She is being sued in her individual and official capacity.

16.     Defendant Andrew White is a jailer/correctional officer at the Rankin County Detention Center. He may be served with process and his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

17.     Defendant Jason McQueary is a jailer/correctional officer at the Rankin County Detention Center. He may be served with process and his place of employment at the Rankin

County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

18.    Defendant Ben Haskin is a jailer/correctional officer at the Rankin County Detention Center. He may be served with process and his place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. He is being sued in his individual and official capacity.

19.    Janice Patrick is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center inmates. Defendant Patrick may be served with process at her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever she may be found. She is being sued in her individual and official capacity.

20.    Betty Tucker is employed with VitalCore Health Strategies, LLC, as a nurse, who provides medical treatment to Rankin County Detention Center inmates. Defendant Patrick may be served with process at her place of employment at the Rankin County Detention Center, 221 North Timber Street, Brandon, Mississippi 39042, or wherever he may be found. She is being sued in her individual and official capacity.

21.    Plaintiff is ignorant about the identities of Defendant John and Jane Does 1-100, who are unknown officers, employees, agents, and/or servants of the Rankin County Sherriff's Department and/or VitalCore. Plaintiff will amend this Complaint to allege their proper names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged and that Decedent's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of Defendant Rankin County and VitalCore

herein and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## FACTS

22.     On or about May 15, 2021, the Decedent Cory Alan Jackson died while in solitary confinement at the Rankin County Detention Center after experiencing psychosis, including severe hallucinations, delusions, and confused and disturbed thoughts. Only a few hours before Cory's death, his sister and mother desperately begged Rankin County Sheriff deputies, to no avail, to take the decedent to the hospital so he could receive treatment for his psychosis.

23.     Cory was bedeviled by substance abuse, addiction, and mental illness for the better part of his adult life.

24.     Cory had been incarcerated at RCDC before his May 14, 2021 arrest.

25.     RCDC knew that Cory suffered from substance abuse and mental illness from his prior arrests and incarceration at the jail.

26.     Shortly before Cory was arrested on May 14, 2021, he had been in the car with his mother and sister, who were trying to drive him to the local hospital.

27.     While in the car, Cory hallucinated and screamed that he saw snakes and stabbed the floorboard with a letter opener. As the car pulled through the front gates of the neighborhood to leave, Cory jumped out of the car while Rankin County Sheriff's Deputy David Ellis was driving by. Defendant Ellis stopped his vehicle and began to pursue Cory.

28.     After Defendant Ellis stopped, Cory's sister screamed, "Please don't hurt him. He's hallucinating. He needs medical assistance".

29.     Defendant Ellis with the assistance of Deputies David Glenn Hicks and Greg McLendon handcuffed Cory. Although Cory was handcuffed, he continued to hallucinate and scream that snakes were trying to get him and thrash around in the patrol vehicle, kicking the doors

and door glasses and banging his head on the inside of the cage. Due to his alternated mental state, Defendants Ellis, Hicks, and McLendon requested emergency medical services.

30.    Once Pafford Emergency Service arrived on the scene, Defendant Ellis informed Pafford's crewmembers that Cory was hallucinating. Unfortunately, Pafford refused to transport Cory to the hospital because he was combative and, to Cory's belief, trying to keep the snakes from attacking.

31.    After Pafford refused to transport Cory to the local hospital, Cory's mother and sister begged Defendants Ellis, Hicks, and McLendon to transport him to the local hospital in the Rankin County Sheriff's Office patrol car. They offered to follow behind the patrol car.

32.    Defendants Ellis, Hicks, and McLendon knew that Cory was mentally incompetent due to his severe hallucinations and combativeness.

33.    Defendants also knew that according to the RCDC's policies and procedures, Cory, due to his severe hallucinations and mental incompetence, should not be admitted as an inmate by the RCDC.

34.    Defendants Ellis, Hicks, and McLendon deliberately ignored RCDC's policies and procedures and Cory's serious medical condition.

35.    Instead of transporting Cory to the nearest medical facility for treatment, Defendants Ellis, Hicks, and McLendon arrested Cory and charged him with resisting arrest, disorderly conduct, and brandishing a deadly weapon in a threatening manner and took him to jail. Cory died approximately three hours later, strapped to a restraint chair.

36.    Defendant Ellis, the arresting deputy, took Cory to the Rankin County Detention Center. Defendant Ellis wrote in the booking report that "Cory was having strong hallucinations and was not capable of answering the coronavirus questions."

37.    Rankin County Sheriff Detention Center policies and procedures require any inmate brought into the facility to be medically evaluated before being accepted.

38.    The medical booking sheet completed by the booking officer Defendant Mark Clark answered yes to the questions that Cory has visual signs of trauma, illness, and obvious pain requiring medical attention. Yes, was also responded to the questions that Cory appeared to be under the influence of drugs or alcohol, a suicide risk, a risk of assault, and most importantly, that Cory appeared to have psychiatric problems.

39.    The RCDC policies and procedures also prohibit admitting inmates needing emergency medical or psychiatric attention. They state that admission officers must "refuse to accept the prisoner" and instead send them to an appropriate medical facility.

40.    Despite Cory's ongoing hallucinations and erratic behavior, jail admission officers, Defendants Mark Clark, Tonya Reynolds, and Debra Murphy, deliberately ignored RCDC's policies and procedures and Cory's severe medical condition and admitted him to the jail and immediately assigned him to solitary confinement for COVID-19 quarantine and suicide watch.

41.    The cell Cory was placed in for medical watch was monitored by a camera, which provided a live feed to the control tower and allowed detention officers to monitor his cell in real-time.

42.    According to jail documents, Cory would not comply with orders. Defendant Clark, Defendants Andrew White, and Jason McQueary stripped Cory naked.

43.    Jail surveillance video shows two officers dragging Cory by his arms naked across the cement jail floor and into a solitary confinement cell.

44.    While in solitary confinement, Cory continued to hallucinate. He first banged his head on the wall, so a deputy put a helmet on his head. Ultimately, Cory was able to remove the

helmet and then banged his head under the mental cot bolted to the wall. He was injured and bleeding.

45.    Defendants Clark, White, and McQueary removed Cory from the solitary confinement cell and wrestled him into a restraint chair. Defendants buckled straps around his wrists, forearms, chest, waist, and ankles and chained the restraint chair to a column in the middle of the cell block surrounded by six other cells.

46.    Defendants Nurse Janice Patrick and Betty Tucker observed Cory's psychosis and erratic behavior throughout his incarceration at the jail beginning the night of May 14, 2021, until his death the early morning of May 15, 2021. Defendants Patrick and Tucker observed Cory's severe hallucinations, delusions, and confused and disturbed thoughts, and they suspected that he was high on drugs. Despite their observations of Cory, Defendants Patrick and Tucker deliberately ignored his severe medical condition, failed to provide him with adequate medical care, and denied him access to medical care that proximately caused his untimely death.

47.    Drenched in sweat and naked except for a padded helmet that repeatedly slipped down over his nose and mouth, Cory thrashed against the restraints, increasing distress before collapsing against the chair, unresponsive just after 3 a.m.

48.    Defendants attempted life-saving medical attention and took Cory to Merit Health Rankin Hospital, but he was declared dead shortly after.

49.    Jail officials at RCDC failed to keep the decedent Cory Alan Jackson safe from harm.

50.    Defendants knew about Cory's serious medical condition and deliberately ignored it as an excessive risk to his health and safety.

51.    Defendants disregarded an obvious risk of harm by placing Cory in a restraint chair when the Defendants should have known that he was suffering from severe hallucinations and delusions and that he was a danger to himself.

52.    Despite the apparent severe medical condition that Cory suffered, Defendants and other jail officials at RCDC took no actions to ensure his safety.

53.    Cory's death is a highly predictable consequence of the Defendants' violation of his constitutional rights and the failure to protect him from harm.

## 1983 CAUSES OF ACTION:
## EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS:
## PROTECTION FROM HARM AND DANGEROUS CONDITIONS OF
## CONFINEMENT

54.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 53 hereinabove. Rankin County, acting by and through its elected and appointed officials, VitalCore, David Ellis, David Glenn Hicks, Greg McLendon, Mark Clark, Tonya Reynolds, Debra Murphy, Andrew White, Jason McQueary, Ben Haskin, Janice Patrick, and Betty Tucker, acted with deliberate indifference in the allegations listed above.

55.    The conditions of the Rankin County Jail, the denial of adequate medical treatment, and the denial of access to adequate medical treatment have caused and/or contributed to the Decedent's death.

56.    Rankin County maintained and operated the Rankin County Jails in such a manner that the conditions of confinement resulted in a comprehensive and pervasive pattern of severe deficiencies in providing for the basic humane needs of the inmates detained in the Rankin County Jail in every aspect.

57.    As shown above, the conditions of confinement also included many policies, practices, and customs that deprived most, if not all, inmates, including the Decedent, of their right to reasonable, adequate, and timely medical care and their right not to be punished during their

11

pre-trial confinement. These included policies, customs, and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Bryan Bailey in his position as the final policymaker of the RCDC. They also included policies, practices, and customs which, though possibly not formally adopted, had become so widespread, well-settled, and deeply embedded in their application, use, employment, and acceptance in the jail to have become the policies of these Defendants.

58.    Defendants and the Doe Defendants 1-100, in their individual and official capacities, established customs, policies, and procedures that directly and proximately caused the deprivation of the Decedent's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Decedent and other inmates housed at RCDC. As a result of these policies, the Defendants failed to protect the Decedent and created unconstitutional conditions of confinement.

59.    Such unwritten policies, customs, and practices include but are not limited to the following:

   a.  Failure to screen inmates for medical issues upon admission to the jail;

   b.  Failure to screen inmates for mental health issues and ignoring or dismissing mental health symptoms presented by inmates and attributing them to behavioral issues rather than recognizing them as symptoms of underlying mental health conditions;

   c.  Inadequate and improper training in recognizing medical emergencies, mental health issues, and substance abuse and responding to same;

   d.  Understaffing of mental health professionals;

   e.  Punitive responses to mental health symptoms. Instead of providing appropriate medical treatment, staff responds punitively to inmates exhibiting symptoms of

mental illness, such as placing them in solitary confinement or using physical restraint;

f.   Failure to follow RCDC's policies and procedures regarding admissions of inmates to the jail, resulting in substandard care for inmates;

g.   Failure to conduct adequate medical screenings at booking;

h.   Ignoring medical complaints and medical emergencies;

i.   Lack of follow-up care after initial medical assessments to address ongoing mental concerns;

j.   Inadequate supervision and discipline of corrections officers;

k.   Inadequate and improper procedures, policies, and practices for investigating improper activities by officers either through offender complaints of misconduct or through internally initiated complaints or investigations;

l.   Inadequate or improper procedures, policies, and practices for identifying and taking appropriate action against officers who need re-training, corrective measures, reassignment, or other non-disciplinary actions through a positive or early warning system designed to prevent the violation of inmates' rights.

m.   Failure to properly classify inmates;

n.   The chronic understaffing at the jail and hiring of jailers with little to no training or supervision.

o.   Failing to conduct safety checks in Booking or having officers assigned to Booking.

p.   Failure to provide constitutionally adequate mental health treatment for inmates, specifically Cory Jackson.

13

60.     Said conditions of confinement also included many policies, practices, and customs that deprived most, if not all, inmates, including the decedent, of their right to reasonable, adequate, and timely medical care. Some of the policies, customs, and practices that constituted said elements include, but were not limited to:

a.    Failure to recognize seriousness, including but not limited to the jailer's and officers' failure to recognize the severity of the decedent's and other inmates' symptoms and dismissive attitude towards their medical condition.

b.    Failure to follow established RCDC policies and procedures for responding to inmates with medical emergencies or mental health crises at the time of booking and in the jail, leading to a delay in accessing appropriate medical care.

c.    Failure to interpret symptoms of a drug overdose, such as loss of consciousness, shallow breathing, or seizures, as unrelated to drug use, leading to delayed or inadequate medical treatment;

d.    Regularly denying, delaying, or interfering with inmate requests and need for medical care during booking and lockdown;

e.    Refusing to accommodate the disabilities of inmates;

f.    Misconceptions or stigma surrounding mental illness and substance abuse lead to failure to take symptoms seriously and

g.    Not promptly providing reasonable medical care and treatment.

61.     The policies, practices, and customs set forth in the preceding paragraph, as well as others that may come to light in the course of this litigation, resulted in numerous, repeated, and pervasive deprivations of the Decedent's right to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments.

62.     By exhibiting deliberate indifference to the substantial risk of harm the Decedent faced as a result of Rankin County's policies and practices set forth above, which resulted in failure to protect the Decedent from harm, ultimately resulting in his death, the Defendants, and Doe Defendants 1-100, violated the Decedent's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

63.     The officials of Rankin County implemented, approved, ratified, known, and/or constructively known each of the foregoing policies, customs, and practices.

64.     Each of the foregoing policies, customs, and practices constituted elements of the conditions of the Decedent's confinement and, individually and in combination, were moving forces in the deprivation of the Decedent's respective rights, including his right to reasonable, adequate, and timely medical care under the Eighth and Fourteenth Amendments.

65.     Plaintiff seeks recovery of all compensatory damages to which the Estate of Cory Alan Jackson is entitled due to the conditions of the Decedent's confinement and the damages he suffered therefrom. The plaintiff further seeks recovery of punitive damages from the Defendants for their callous and reckless disregard for the decedent's rights, welfare, and medical needs.

## EPISODIC ACTS OR OMISSIONS

66.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 65 hereinabove.

67.     The Due Process Clause of the Eighth and Fourteenth Amendments requires the Defendants to provide pretrial detainees with basic human needs during their confinement, including medical care and protection from harm. The Defendants and their employees had subjective knowledge of the severe and substantial threat that the Decedent might suffer harm. Yet, the Defendants nevertheless disregarded the risk by responding to it with deliberate

indifference. The Defendants and their employees clearly breached this duty. As a result, Cory Jackson died while in custody at RCDC.

68.    Rankin County maintained and operated a jail in such a manner as to cause the pervasive deprivation of inmates' constitutional rights in every respect and at every level. The Decedent was forced to live in this jail and endure the action and inaction of its officials, as well as the jailers and jail staff acting under jail policies, customs, and practices, under color of law, exhibiting callous and deliberate indifference, in depriving him of his rights guaranteed under the Constitution and laws of the United States.

69.    Rankin County, Doe Defendants 1-100, as well as jailers and jail staff acting pursuant to jail policy, practice, and customs, created and required inmates to live in a jail that was deficient in so many respects that it was not suitable for human confinement. These actions resulted in the infliction of punishment on each inmate who was forced to live there, including the Decedent.

70.    As shown hereinabove, Rankin County adopted, implemented, and permitted many other policies, practices, and customs that deprived most, if not all, inmates, including decedents, of their right to reasonable, adequate, and timely medical care. These included policies, customs, and practices, whether written or unwritten, that were expressly announced, sanctioned, and/or implemented by Bryan Bailey as the final policy maker of the RCDC. They also included policies, practices, and customs which, though possibly not formally adopted, had become so widespread, well-settled, and deeply embedded in their application, use, employment, and acceptance in the jail to have become the policies of these Defendants.

71.    Some of the policies, customs, and practices of the RCDC included, but were not limited to:

    a.    Failure to screen inmates for medical issues upon admission to the jail;

b. Failure to screen for mental health issues and ignoring or dismissing mental health symptoms presented by inmates and attributing them to behavioral issues rather than recognizing them as symptoms of underlying mental health conditions;

c. Regularly denying, delaying or interfering with inmate requests for medical care;

d. Failure to follow RCDC's policies and procedures regarding admissions of inmates to the jail, resulting in substandard care for inmates; Understaffing of mental health professionals;

e. Punitive responses to mental health symptoms. Instead of providing appropriate medical treatment, staff responds punitively to inmates exhibiting symptoms of mental illness, such as placing them in solitary confinement or using physical restraint;

f. Failure to follow RCDC's policies and procedures regarding admissions of inmates to the jail, resulting in substandard care for inmates;

g. Failure to follow established RCDC policies and procedures for responding to inmates with medical emergencies or mental health crises at the time of booking and in the jail, leading to a delay in accessing appropriate medical care.

h. Failure to interpret symptoms of a drug overdose, such as loss of consciousness, shallow breathing, or seizures, as unrelated to drug use, leading to delayed or inadequate medical treatment;

i.  Ignoring, delaying, or failing to promptly comply with the treatment orders of the jail doctor and/or outside physicians;

j. Refusing to accommodate the disabilities of inmates and;

17

k.  Refusing to move seriously ill patients to a hospital or other location where they can receive appropriate care, instead leaving them in a jail cell and leaving no one to care for them.

72.  The policies, practices, and customs outlined in the preceding paragraph, as well as others that may come to light in the course of this litigation, resulted in numerous, repeated, pervasive, and persistent deprivations of inmates' rights to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at the RCDC. The Decedent suffered numerous deprivations of his right to reasonable, adequate, and timely medical care due to the actions of these policymakers, their policies, the jailers, and the jail staff.

73.  VitalCore and its employees, including but not limited to Defendants Janice Patrick and Betty Tucker, acted with deliberate indifference and callous and reckless disregard for the rights, welfare, and medical needs of and other constitutional rights of the Decedent.

74.  Jailers and jail staff, including David Ellis, David Glenn Hicks, Greg McLendon, Mark Clark, Tonya Reynolds, Debra Murphy, Andrew White, Jason McQueary, Ben Haskin, and the Doe Defendants, acted or failed to act, pursuant to the official policies, customs and practices of Bailey and Rankin County, or at the direction of and with the approval of these officials, in depriving Decedent of his rights described herein. The policies, practices, and customs were moving forces in the action and inaction of jailers and jail staff, and these jailers and jail staff acted with deliberate indifference to the rights, welfare, medical needs, and other constitutional rights of the Decedent.

75.  Defendants' failure to properly oversee and manage the Decedent's apparent mental instability, i.e., condition directly caused his death. In doing so, Defendants violated clearly established constitutional rights but not limited to:

a.  Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

b.  Decedent's right not to be deprived of liberty without due process of law;

c.  Decedent's right to be safe and protected from injury while in Defendants' custody;

d.  Decedent's right to necessary medical treatment for his very serious medical/mental condition.

76.     By Defendants' failure to provide Decedent with the medically necessary care and/or medications required to manage his mental condition properly, Defendants' actions deprived Decedent of the rights secured for him by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

77.     The deprivation of the Decedent's rights by Defendants, as described herein, directly and proximately caused Decedent to suffer excruciating pain, extraordinary mental and emotional pain and anguish, and ultimately death.

78.     As a direct and foreseeable result of Defendants; actions, Plaintiff has suffered damage including, but not limited to, emotional distress, mental anguish, as well as pain and suffering.

79.     From Defendant Rankin County and VitalCore, jointly and severally, Plaintiff seeks recovery of all compensatory damages to which the Estate of Cory Jackson is entitled. Plaintiff further seeks recovery of punitive damages from VitalCore, the individual named, and Doe Defendants named herein (all in their individual capacities) for the conduct in callous and reckless disregard for the rights, welfare, and needs of the Decedent.

## DENIAL OF MEDICAL CARE

80.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 79 hereinabove.

81.     Defendants' failure to properly oversee and manage the Decedent's serious health

condition directly caused his death. In doing so, Defendants violated clearly established constitutional rights, including but not limited to:

    a.   Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

    b.   Decedent's rights not to be deprived of liberty without due process of law;

    c.   Decedent's right to be safe and protected from injury while in Defendants' custody; and

    d.   Decedent's right to necessary medical treatment for his very serious medical condition.

82.     By their failure to provide the Decedent with the medically necessary medications and care required to sustain his life, the Defendant' actions deprived him of the rights secured for him by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

83.     As a direct and foreseeable result of Defendant's actions, Plaintiff has suffered damage including, but not limited to, emotional distress, mental anguish, as well as pain and suffering.

## RESPONDEAT SUPERIOR

84.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 83 hereinabove.

85.     VitalCore's employees acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent the Decedent's death. At all times relevant, each Defendant owed a duty to the Decedent to ensure his health, safety, and well-being, and the Defendants breached this duty. The actions and inactions of VitalCore, David Ellis, David Glenn Hicks, Greg McLendon, and/or Doe Defendants 1-100 led directly to the death of Cory Jackson. Vital Core, David Ellis, David Glenn Hicks, Greg McLendon, Doe Defendants 1-100's employers, is liable for their actions which were undertaken during the course and scope of their employment.

86.    VitalCore is also responsible for the actions and inactions alleged herein against them, Rankin County, the individual Defendants, and Doe Defendants 1-100, which caused the damages suffered by the Plaintiff. Further, such actions and/or inactions by Defendants, and Doe Defendants 1-100 were committed within the course and scope of their employment with VitalCore.

**RATIFICATION**

87.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 86 hereinabove.

88.    Rankin County, its policymakers, and the Doe Defendants 1-100 were advised about the Rankin County incident involving the Decedent. Rankin County, by and through its policymakers, ignored evidence of widespread disregard of policies and procedures intended to protect inmates, including the Decedent, as well as systemic deficiencies that violated the Decedent's constitutional rights. Based on information and belief, no officer, supervisor, or other person was retrained on policies intended to protect inmates. Instead, the policymakers approved the jailers' actions and, therefore, ratified those actions.

89.    Through these acts and omissions of ratification, Rankin County's policymakers were deliberately indifferent to the Decedent's constitutional rights as set forth herein. A Plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and its basis, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). An isolated decision by a municipal official not intended to control future decisions can

give rise to municipal liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81 (1986). Rankin County ratified its employees' conduct and is therefore liable for the Decedent's death.

## PUNITIVE DAMAGES

90.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 89 hereinabove.

91.    Defendant VitalCore, its employees, Janice Patrick, Betty Tucker, David Ellis, David Glenn Hicks, Greg McLendon, Mark Clark, Tonya Reynolds, Debra Murphy, Andrew White, Jason McQueary, Ben Haskin, and Doe Defendants 1-100's employees, in their individual capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner as previously described herein. The actions of these Defendants warrant punitive damages.

92.    The Defendants' actions in their individual capacities exhibited gross negligence and direct disregard for the safety of the Decedent. Punitive damages should be awarded against the Defendants. The Defendants' tortious actions caused the wrongful death of the Decedent and, therefore, Plaintiff's emotional distress and mental anguish.

## PRAYER FOR RELIEF

The Plaintiff, Joyce Reddell, requests that upon a jury trial of this cause, the Court will award all relief due Plaintiff as set forth herein, including but not limited to the following:

a. Actual and general compensatory damages of, from, and against the Defendants, in the amount to be determined by this Court;

b. Order that the Defendants pay to Plaintiff a sum in punitive damages sufficient to deter these Defendants and others similarly situated from like conduct in the future;

c. Payment of medical and burial expenses;

d.  Order the Defendants to pay Plaintiff's costs and expenses, including expert witness fees and reasonable attorney's fees, and pre and post-judgment interest on all amounts found due and owing, including, but not limited to, those attorney's fees found properly awardable pursuant to 42 U.S.C. § 1988(b); and

e.  Grant such other general and special relief, of either an equitable or legal nature, to the Plaintiff as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 10th day of May, 2024.

**JOYCE REDDELL, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF CORY ALAN JACKSON, DECEASED**

BY:  /s/ LaToya T. Jeter_____
     LATOYA T. JETER
     *Attorney for Plaintiff*

OF COUNSEL:

LaToya T. Jeter, Esq. (MSB #:102213)
BROWN BASS & JETER, PLLC
1755 Lelia Drive (39216)
Post Office Box 22969
Jackson, Mississippi 39225
Telephone:  601-487-8448
Facsimile:  601-510-9934
Email: jeter@bbjlawyers.com
***Attorney for Plaintiff***